UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTHFIELD INSURANCE COMPANY, a foreign insurer,<br><br>      Plaintiff,<br> v.<br><br>YATES, WOOD, & MACDONALD, INC., a Washington Corporation; 1000 MADISON, LLC, a Washington Limited Liability Company; GARY R. ALLEN, an individual; and HOLLY PUGSLEY, an individual,<br><br>      Defendants. | CASE NO. 2:24-cv-00441-TL<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

   This is an action for declaratory judgment regarding an insurer's duty to defend and duty to indemnify its insureds in an underlying state lawsuit. This matter is before the Court on Plaintiff Northfield Insurance Company's Motion for Summary Judgment. Dkt. No. 42. Having reviewed Defendants' response (Dkt. No. 47), Plaintiff's reply (Dkt. No. 49), and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS the motion.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 1

## I. BACKGROUND

### A. The Underlying Lawsuit

Defendant Holly Pugsley filed the underlying lawsuit in King County Superior Court. *See* Dkt. No. 43-1 (complaint). She sued Defendant Gary R. Allen for damages arising out of an alleged incident at the Chasselton Apartments, the apartment complex where she resided. *See id.* ¶¶ 3.1–3.5, 4.1–4.3, 5.1–5.4, 6.1–6.3, 11.1–11.10. She also sued the owner of the apartments, Defendant 1000 Madison, LLC ("Madison"), and its property manager, Defendant Yates, Wood, & MacDonald, Inc. ("Yates"), for various claims. *See id.* ¶¶ 7.1–7.4 (both for negligence), 8.1–8.5 (Yates for negligent training and supervision), 9.1–9.4 (Yates for negligent hiring and retention), 10.1–10.5 (both for vicarious liability), 11.1–11.10 (all defendants for sex discrimination), 12.1–12.3 (Madison for premises liability).

Defendant Pugsley alleges that, on or about August 14, 2020, she was entering her apartment when she was approached by Defendant Allen, the property manager of the Chasselton Apartments. *Id.* ¶ 2.1. Defendant Allen asked Defendant Pugsley if she was interested in seeing a larger unit in the building, and when she accepted, he took her to an apartment on the fourth floor. *Id.* ¶¶ 2.2, 2.4. After entering the apartment, Defendant Puglsey learned that it belonged to Defendant Allen. *Id.* ¶ 2.4. Defendant Allen offered her a drink, which she accepted due to feeling intimidated. *Id.* When Defendant Pugsley turned to pour out the drink in the sink, she felt a strike to the back of her head and lost consciousness. *Id.* She woke up the next morning in her own bed, feeling like she had a concussion and with her clothing disheveled. *Id.* ¶¶ 2.4, 2.5. Two days later, Defendant Allen apologized to Defendant Pugsley—an apology she understood to be for the physical and sexual assault. *Id.* ¶ 2.5.

After the alleged incident, Defendant Pugsley reported the alleged assault to Defendant Yates, which fired Defendant Allen based on her report as well as other alleged assaults or

attempted assaults. *Id.* ¶ 2.7. Defendant Yates told Defendant Pugsley that Defendant Allen had been fired, but Defendant Allen refused to leave for another four months, leading Defendant Pugsley to change her locks. *Id.* ¶ 2.8. Defendant Pugsley also began therapy for the emotional trauma and mental anguish caused by Defendant Allen's assault. *Id.* ¶ 2.9.

Glenn Walter became the new on-site property manager for the Chasselton Apartments (and an employee of Defendant Yates). *Id.* Defendant Pugsley met with Mr. Walter to better understand what had happened to her. *Id.* ¶ 2.10. Mr. Walter explained that he had been familiar with Defendant Allen and his mother for years prior to the assault. *Id.* He stated that Defendant Allen was hired by Defendant Yates without a background check and despite Mr. Walter's belief that Defendant Allen was a "pathological liar." *Id.* He stated that Defendant Allen had been fired for assaulting Defendant Pugsley and/or at least one other female tenant at the Chasselton Apartments. *Id.* He also stated that Defendant Allen had previously been fired from a job for sexually inappropriate behavior toward female customers and that he had forged checks. *Id.* Mr. Walter later met with Defendant Pugsley again and reiterated the "salient points" of their prior conversation, as well his belief that Defendant Allen had committed the assault. *Id.* ¶ 2.11.[1]

Defendant Pugsley alleges that "[a]s a result of the physical and sexual assaults," she sustained "personal injuries, emotional distress, and special and general damages." *Id.* ¶ 2.12. She alleges that Defendant Allen was hired by Defendant Yates "without adequate background check, training, or supervision of any type." *Id.* ¶ 2.15. She alleges that Defendant Madison "failed to ensure" that Defendant Yates "staffed the Chasselton Apartments with employees that

---

[1] Defendant Yates offers extrinsic facts through the declaration of Kelly Szeto, submitted with its opposition. *See* Dkt. No. 48. Plaintiff moves to strike the declaration. *See* Dkt. No. 49 at 4–5. The motion is DENIED as moot, however, as the Court's Order relies only on the underlying complaint and insurance policy and is not affected by the proffered extrinsic facts.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 3

did not pose a risk of harm to its female tenants," and that Defendant Madison "knew or should have known of the risk posed by Defendant Allen." *Id.* ¶ 2.17.

**B.     The Insurance Policy**

Plaintiff Northfield Insurance Company issued an insurance policy (the "Policy") to Defendant Yates, which provided coverage from July 19, 2020, to July 19, 2021. *See* Dkt. No. 44-1 (policy). The Policy includes the following Insuring Agreement, which states in relevant part:

> SECTION I – COVERAGES
>
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1.   **Insuring Agreement**
>
>> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> [. . .]
>
>> b.  This insurance applies to "bodily injury" and "property damage" only if:
>>
>>> (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>>
>>> (2)  The "bodily injury" or "property damage" occurs during the policy period[.]
>
> [. . .]
>
> SECTION V – DEFINITIONS
>
> [. . .]

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada[.]

[. . .]

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Dkt. No. 44-1 at 20, 31–32 (boldface in original). Relevant to the disposition of this motion, the Policy also contains the following exclusion:

**EXCLUSION – ASSAULT OR BATTERY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1.  The following exclusion is added to Paragraph 2., Exclusions, of SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

**Assault or Battery**

"Bodily injury" or "property damage" arising out of any act of "assault" or "battery" committed by any person, including any act or omission in connection with the prevention or suppression of, or in response to, such "assault" or "battery".

[. . .]

3.  The following is added to the **DEFINITIONS** Section:

"Assault" means any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 5

> "Battery" means any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected.

Dkt. No. 44-1 at 37 (boldface in original).

C.     **Procedural History**

On April 2, 2024, Plaintiff filed this declaratory-judgment action seeking a determination of coverage for any claims arising out of the underlying lawsuit. *See* Dkt. No. 1. All Parties except for Defendant Allen have appeared in this matter.[2] The Court denied Defendants' joint motion to stay while staying discovery against Defendant Yates (*see* Dkt. No. 52), and it granted Defendant Yates's motion to amend counterclaims (*see* Dkt. No. 51), which Defendant Yates later amended again by stipulation (*see* Dkt. No. 56). Trial is scheduled for February 23, 2026. *See* Dkt. No. 50 (scheduling order).

## II.     LEGAL STANDARD

A.     **Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

---

[2] The deadline to serve Defendant Allen was July 22, 2024. *See* Dkt. No. 25.

The court must draw all justifiable inferences in favor of the non-movant. *Id.* at 255. The court does not make credibility determinations or weigh evidence at this stage. *Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("[W]here the facts specifically averred by [the non-moving] party contradict facts specifically averred by the movant, the [summary judgment] motion must be denied.").

If the non-movant bears the burden of proof at trial, the movant only needs to show an absence of evidence to support the non-movant's case. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once such a showing is made, the burden shifts to the non-movant to show more than the mere existence of a scintilla of evidence in support of its case—the party must show sufficient evidence that a jury could reasonably find for the non-movant. *Id.* (citing *Anderson*, 477 U.S. at 252). Even if the non-movant does not have the burden of proof at trial, it must nonetheless show that a genuine issue of material fact exists by presenting evidence in its favor. *F.T.C. v. Stefanchik*, 559 F.3d 924, 929–30 (9th Cir. 2009) (affirming summary judgment for plaintiff where defendants failed to show significantly probative evidence to dispute plaintiff's evidence).

In short, the Federal Rules of Civil Procedure "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (citing Fed. R. Civ. P. 56(c)).

**B.  Duty to Defend**

"The insurer's duty to defend is separate from, and substantially broader than, its duty to indemnify." *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 878, 297 P.3d 688 (2013)

(citing *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002)). The duty to defend "generally is determined from the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803, 329 P.3d 59 (2014). The duty "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id.* (quoting *Truck Ins. Exch.*, 147 Wn.2d at 760); *accord Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52–53, 164 P.3d 454 (2007). "An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is 'clearly not covered by the policy.'" *Woo*, 161 Wn.2d at 53 (quoting *Truck Ins. Exch.*, 147 Wn.2d at 760). "[I]f a complaint is ambiguous, a court will construe it liberally in favor of 'triggering the insurer's duty to defend.'" *Id.* (quoting *Truck Ins. Exch.*, 147 Wn.2d at 760); *see also Immunex*, 176 Wn.2d at 880 ("[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." (quoting *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 405, 229 P.3d 693 (2010))). "In sum, the duty to defend is triggered if the insurance policy *conceivably covers* the allegations in the complaint . . . ." *Woo*, 161 Wn.2d at 53 (emphasis in original).

"There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured." *Id.* (quoting *Truck Ins. Exch.*, 147 Wn.2d at 761). "First, if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt that the insurer has a duty to defend." *Id.* (citing *Truck Ins. Exch.*, 147 Wn.2d at 761). The insurer has the burden "to determine if there are *any* facts in the pleadings that could conceivably give rise to a duty to defend." *Id.* at 53–54 (emphasis in original) (citing *R.A. Hanson Co. v. Aetna Ins. Co.*, 26 Wn. App. 290, 294, 612 P.2d 456 (1980)). "Second, if the allegations in the complaint 'conflict with facts known to or readily ascertainable by the insurer,'

ORDER ON MOTION FOR SUMMARY JUDGMENT - 8

1   or if 'the allegations . . . are ambiguous or inadequate,' facts outside the complaint may be

2   considered." *Id.* at 54 (quoting *Truck Ins. Exch.*, 147 Wn.2d at 761). "The insurer may not rely

3   on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the

4   duty." *Id.* (citing *Truck Ins. Exch.*, 147 Wn.2d at 761).

5         Finally, "[w]hen interpreting an insurance policy, [a court] give[s] the language its plain

6   meaning, construing the policy as the average person purchasing insurance would." *Robbins v.*

7   *Mason Cnty. Title Ins. Co.*, 195 Wn.2d 618, 626, 462 P.3d 430 (2020). "The Washington

8   Supreme Court has consistently ruled that where the policy language is clear and unambiguous,

9   it must be enforced as written." *Shepard v. Foremost Ins. Co., Inc.*, No. C08-434, 2009 WL

10  675093, at *6 (W.D. Wash. Mar. 11, 2009) (citing, *inter alia*, *Wash. Pub. Util. Dist. Utils. Sys. v.*

11  *Pub. Util. Dist. No. 1 of Clallam Cnty.*, 112 Wn.2d 1, 771 P.2d 701 (1989)).

12                           **III.   DISCUSSION**

13  **A.    Duty to Defend**

14        Here, the Court finds that the claims alleged in the Complaint are not even conceivably

15  covered by the Policy, as they fall under the Policy's assault and battery exclusion. All of

16  Defendant Pugsley's claims against Defendant Yates concern "act[s] or omission[s] in

17  connection with the prevention or suppression of, or in response to," the alleged assault and/or

18  battery by Defendant Allen. Dkt. No. 44-1 at 37. Defendant Pugsley alleges that Defendant Yates

19  negligently hired Defendant Allen without a background check, negligently failed to train or

20  supervise him, and failed to warn tenants and the public of Defendant Allen's possible harm to

21  others. *See* Dkt. No. 43-1 ¶¶ 2.15, 2.17, 7.1–7.4, 8.1–8.5, 9.1–9.4, 12.1–12.3. These allegations

22  constitute both acts (*i.e.*, hiring) and omissions (*i.e.*, no background check, no training or

23  supervision, no warnings) "in connection with the prevention or suppression" of Defendant

24  Allen's alleged attack. *See, e.g.*, *Northfield Ins. Co. v. Sandy's Place, LLC*, 530 F. Supp. 3d 952,

967 (E.D. Cal. 2021) (holding a substantially similar exclusion applied to claims that defendants "negligently owned, operated, controlled and managed" a bar where shooting occurred).

In its response, Defendant Yates argues that the Complaint makes a distinction between "pre-assault" and "post-assault" conduct, and that Plaintiff has a duty to defend as to Defendant Yates's post-assault conduct. *See* Dkt. No. 47 at 10–12 (discussing *Am. Best Food*, 168 Wn.2d 398, and *Homesite Ins. Co. of the Midwest v. Walker*, No. C18-5879, 2019 WL 4034690 (W.D. Wash. Aug. 27, 2019)). Although Washington courts do make "a preassault/postassault distinction" in analyzing "arising out of" assault and battery exclusions, *Am. Best Food*, 168 Wn.2d at 407, the distinction is made irrelevant here by additional language in the Policy: Coverage is excluded for injury from acts or omissions "in response to" an assault or battery, which unambiguously includes Defendant Yates's alleged conduct after the assault (*i.e.*, Defendant Allen's termination, delay in his eviction). This language was not at issue in *American Best Food* (exclusion for injury "arising out of . . . [a]ssault and/or [b]attery" or "[a]ny actual or alleged negligent act or omission in the prevention or suppression of" the assault or battery, 168 Wn.2d at 406) or *Homesite* (exclusion for injury "arising out of" assault or battery, 2019 WL 4034690, at *3).

Moreover, even when construing the complaint liberally, the Court finds the Complaint alleges claims regarding only the hiring, management, and retention of Defendant Allen, not any "post-assault" conduct. Defendant Yates cites to Defendant Pugsley's claim for negligence (*see* Dkt. No. 43-1 ¶¶ 7.1–7.4), but that claim (and all the others) says nothing about Defendant Yates's behavior after the assault. Defendant Yates also cites to Plaintiff's allegations regarding events after the alleged assault (*see id.* ¶¶ 2.7–2.11), but these paragraphs also do not support its argument. Most of the cited allegations are about Defendant Yates's termination of Defendant Allen (presumably a positive step from Defendant Pugsley's perspective) or information that

1  Defendant Pugsley learned after the assault about Defendant Allen's history and reputation prior
2  to his hiring by Defendant Yates (which track to the acts or omissions in connection with the
3  prevention of the assault already discussed). While Defendant Pugsley makes a passing
4  allegation that Defendant Yates "did nothing to evict" Defendant Allen for four months (*id.*
5  ¶ 2.8), this single sentence regarding post-assault conduct appears to simply complete the
6  narrative and may also speak to Defendant Yates's management of its employees. Ultimately,
7  Defendant Pugsley clarifies elsewhere the gravamen of her claims: Defendant Yates's failure in
8  creating the risk of Defendant Allen in the first place. *See id.* ¶¶ 2.15, 2.17.

Therefore, as to the duty to defend, Plaintiff's motion is GRANTED.[3]

## B.  Duty to Indemnify

"[T]he duty to indemnify 'hinges on the insured's *actual liability* to the claimant and *actual coverage* under the policy.'" *Woo*, 161 Wn.2d at 53 (emphasis in original) (quoting *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.2d 1167 (2000)); *see also George Sollitt Corp. v. Howard Chapman Plumbing & Heating*, 67 Wn. App. 468, 475, 836 P.2d 851 (1992) ("The duty to indemnify arises when the plaintiff in the underlying action prevails on facts that fall within coverage."). In other words, "the duty to indemnify exists only if the policy *actually covers* the insured's liability." *Id.* (emphasis in original); *accord Immunex*, 176 Wn.2d at 879.

Here, the Court has already found that the Policy does not conceivably cover the claims in the underlying lawsuit, including the post-assault conduct by Defendant Yates (to the extent any such conduct is even alleged or relevant to the asserted claims). *See supra* Section III.B. "If there is no duty to defend, then there is no duty to indemnify." *Am. Strategic Ins. Corp. v.*

---

[3] Because the Court grants the motion based on this exclusion, it need not reach Plaintiff's additional arguments regarding other limitations and exclusions contained in the Policy.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 11

*Jackson*, No. C23-5461, 2024 WL 3521530, at *8 (W.D. Wash. July 24, 2024) (citing *Liberty Mut. Ins. Co. v. Lange*, No. C20-309, 2023 WL 4704712, at *6 (W.D. Wash. July 24, 2023)). Defendant Yates argues that the motion should be denied because there are disputed material facts regarding causation of Defendant Pugsley's injuries (*see* Dkt. No. 47 at 23), but these facts are not relevant to the Court's application of the assault and battery exclusion.

Therefore, as to the duty to indemnify, Plaintiff's motion is GRANTED.

### IV.   CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment (Dkt. No. 42) is GRANTED. Plaintiff does not owe a duty under the Policy to defend or indemnify Defendant Yates in *Holly Pugsley v. Gary R. Allen, et al.*, King County Superior Court Cause No. 23-2-14966-1 SEA.

Dated this 3rd day of December 2024.

Tana Lin
United States District Judge